739 F.2d 1219
 10 Media L. Rep. 2088
 WORRELL NEWSPAPERS OF INDIANA, INC., d/b/a Greensburg Daily
News, and Karen McKinley, Plaintiffs-Appellants,
v.
Honorable John WESTHAFER, Decatur County Circuit Court,
Judge, and Kenneth Bass, Decatur County
Prosecutor, Defendants-Appellees.
 No. 83-2851.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 3, 1984.
Decided July 16, 1984.
Rehearing and Rehearing In Banc
Denied Aug. 28, 1984.
 
 Stanley C. Fickle, Barnes & Thornburg, Indianapolis, Ind., for plaintiffs-appellants.
 Mark J. Tidd, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.
 Before WOOD and FLAUM, Circuit Judges, and GIBSON, Senior Circuit Judge.*
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The plaintiffs, Worrell Newspapers and Karen McKinley, appeal from the district court's denial of their motion for summary judgment, and the district court's grant of the defendants', the Honorable John Westhafer and Kenneth Bass, motion for summary judgment, 570 F.Supp. 1447. We reverse.
 
 I. Facts
 
 2
 On November 4, 1982, Karen McKinley, a reporter for the Greensburg Daily News, was informed by a confidential source that a criminal information would be filed that morning by the Decatur County Prosecutor, Kenneth Bass, in connection with an arson investigation. McKinley went to the County Clerk's Office to look at the court records in order to confirm the suspect's name, that a probable cause hearing had been held, and to learn the details of the charge. The employees in the office would not allow McKinley to look at the criminal docket book, and they also denied her access to all records relating to the criminal information involved.
 
 
 3
 McKinley then went to see John Westhafer, Judge of the Decatur County Circuit Court, and asked him why she was being denied access to these records. The Judge responded that he had granted the County Prosecutor's motion to seal the information until the suspect was arrested. The motion had been granted pursuant to an Indiana statute which punishes by contempt anyone who discloses the name contained in a sealed information before the suspect is arrested. Ind.Code Ann. Sec. 35-34-1-1(d) (Burns Cum.Supp.1984). McKinley asked Judge Westhafer what would happen if the Greensburg Daily News published a story concerning the information. The Judge told McKinley that she and her editor would be held in contempt if the newspaper published a story about the information before the criminal suspect was arrested.
 
 
 4
 McKinley returned to the newspaper and related these events to her editor. Because of the possible contempt sanction, the paper did not print any story on November 4 about the sealed information. On November 5, the newspaper was informed that the individual named in the sealed information had been arrested, and the paper published an article concerning the information and arrest in its evening edition. All parties agree, and the district court found, that but for Sec. 35-34-1-1(d) and Judge Westhafer's statement to McKinley, the plaintiffs would have published an article reporting the existence of the information, and the individual it named, on November 4.
 
 
 5
 The plaintiffs brought this action in federal district court seeking a declaratory judgment that Sec. 35-34-1-1(d) is unconstitutional because it violates the rights of freedom of speech and the press as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States. There was no dispute over the facts and so the case was submitted to the court on cross-motions for summary judgment. Although the district court acknowledged that the Indiana statute infringed upon the right of freedom of the press guaranteed by the First Amendment, it held that the State's interest in the apprehension of criminals was sufficiently compelling to overcome the constitutional infirmity, and the statute was narrowly tailored to serve that interest in the manner least restrictive of a free press.
 
 II. Discussion
 
 6
 The only issue before us concerns the authority of a state to subject to criminal punishment any person who truthfully publishes the name of an individual against whom a sealed criminal indictment or information has been filed. Because we hold that Sec. 35-34-1-1(d) is, on its face, an unconstitutional infringement on the First Amendment, we do not reach the other issues raised by the plaintiffs.
 
 Sec. 35-34-1-1(d) provides as follows:
 
 7
 The court, upon motion of the prosecuting attorney, may order that the indictment or information be sealed. If a court has sealed an indictment or information, no person may disclose the fact that an indictment or information is in existence or pending until the defendant has been arrested or otherwise brought within the custody of the court. However, any person may make any disclosure necessarily incident to the arrest of the defendant. A violation of this subsection is punishable as contempt.
 
 
 8
 It is clear that the statute applies to the press. The First Amendment provides that "Congress shall make no law ... abridging the freedom ... of the press...." U.S. Const. amend. I. Through the Fourteenth Amendment, this prohibition applies equally to the states. Thornhill v. Alabama, 310 U.S. 88, 95, 60 S.Ct. 736, 740, 84 L.Ed. 1093 (1940); Near v. Minnesota, 283 U.S. 697, 707, 51 S.Ct. 625, 627, 75 L.Ed. 1357 (1931). Despite the unequivocal language of the First Amendment, its freedoms are not absolute. Near, 283 U.S. at 708, 51 S.Ct. at 628. The authority of a state to enact laws to promote the health, safety, and general welfare of its people must be acknowledged, id. at 707, 51 S.Ct. at 627, and accommodated by constitutional jurisprudence. However, when a state statute infringes upon constitutional guarantees, the interest which the state seeks to secure must be compelling. In Smith v. Daily Mail Pub. Co., 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), the Supreme Court held as follows:
 
 
 9
 Whether we view the statute [forbidding publication of an alleged juvenile delinquent's name] as a prior restraint or as a penal sanction for publishing lawfully obtained, truthful information is not dispositive because even the latter action requires the highest form of state interest to sustain its validity. Prior restraints have been accorded the most exacting scrutiny in previous cases. See Nebraska Press Assn. v. Stuart, supra, [427 U.S. 539] at 561 [96 S.Ct. 2791, 2803, 49 L.Ed.2d 683; Organization for a Better Austin v. Keefe, supra, [402 U.S. 415] at 419 [91 S.Ct. 1575, 1577, 29 L.Ed.2d 1]; Near v. Minnesota ex rel. Olson, supra, [283 U.S.] at 716 [51 S.Ct. at 631]. See also Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546 [95 S.Ct. 1239, 43 L.Ed.2d 448] (1975)....
 
 
 10
 Our recent decisions demonstrate that state action to punish the publication of truthful information seldom can satisfy constitutional standards.
 
 
 11
 Id. at 101-02, 99 S.Ct. at 2669-70. Also, "the burden is on the government to show the existence of such an interest." First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978), citing Elrod v. Burns, 427 U.S. 347, 362, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). Further, the interest cannot be pursued by means which broadly stifle fundamental liberties when the end can be more narrowly achieved. In other words, the state must use the least restrictive means for achieving its purpose. Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue, 460 U.S. 575, ----, 103 S.Ct. 1365, n. 7 , 75 L.Ed.2d 295, 305 n. 7 (1983); Bellotti, 435 U.S. at 786, 98 S.Ct. at 1421. In addition, there is a "heavy presumption" against the constitutional validity of a statute which infringes upon First Amendment guarantees. Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); Carroll v. President & Comm'rs of Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968).
 
 
 12
 The State argues that these standards are not applicable because Sec. 35-34-1-1(d) is not a "prior restraint" on the press, but rather provides a subsequent punishment for violation of its terms. This is a distinction without a difference, and the Supreme Court recently eliminated this semantic distinction. Daily Mail, 443 U.S. at 101-02, 99 S.Ct. at 2669-70; see also Thornhill, 310 U.S. at 101-02, 60 S.Ct. at 743-44 ("The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment.") Indeed, as the Court went on to note, "state action to punish publication of truthful information seldom can satisfy constitutional standards." Daily Mail, 443 U.S. at 102, 99 S.Ct. at 2670.
 
 
 13
 We consider only one of the interests which the State tenders, and characterizes as compelling, as a justification for the statute.[1] The interest boils down to the State's interest in the apprehension of criminals.
 
 
 14
 We agree that courts have the power to seal indictments or informations, under appropriate circumstances, to facilitate the apprehension of criminals. See generally, United States v. Muse, 633 F.2d 1041 (2d Cir.1980) (en banc ), cert. denied, 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981); United States v. Slochowsky, 575 F.Supp. 1562 (E.D.N.Y.1983). For federal courts, Rule 6(e)(4) of the Federal Rules of Criminal Procedure formally embodies this judicial power.[2] Rule 6(e)(2) contains a general provision for secrecy in order to give effect to and protect sealed records.[3] The obvious purpose behind these provisions is to "prevent the requirement of an indictment from serving as public notice that would enable the defendant to avoid arrest." Muse, 633 F.2d at 1043. However, unlike Sec. 35-34-1-1(d), the secrecy provision in Rule 6(e) applies, by its terms, only to individuals who are privy to the information contained in a sealed document by virtue of their positions in the criminal justice system. See note 3, supra; see also Fund for Constitutional Gov't v. National Archives & Records Serv., 656 F.2d 856, 870 n. 33 (D.C.Cir.1981). Indeed, a federal district court has held recently that if Rule 6(e) was construed to apply to witnesses who testify before grand juries it would violate the First Amendment. In re Grand Jury Proceedings, 558 F.Supp. 532, 534-35 (W.D.Va.1983). Thus, while we recognize the State's interest in apprehending criminals, we do not think it is sufficiently compelling to justify the prohibition of publication by any person, including members of the press, of the contents of a sealed document, mandated by Sec. 35-34-1-1(d).
 
 
 15
 The Supreme Court has recognized that infringement upon First Amendment freedoms may be justified, but only in exceptional cases: when the country is at war, when a sovereign seeks to protect the primary requirements of decency by prohibiting obscenity, and when the security of community life is threatened by incitements to acts of violence and the overthrow by force of an orderly government. Near, 283 U.S. at 716, 51 S.Ct. at 631. Even the country's interest in national security must bend to the dictates of the First Amendment. See New York Times Co. v. U.S., 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971) (per curiam ).[4] Indiana's asserted interest does not reach the level of these concerns. We conclude that the publication Indiana seeks to punish under Sec. 35-34-1-1(d) lies "near the core of the First Amendment," and the interest advanced by the threatened "imposition of criminal sanctions [is] insufficient to justify the actual and potential encroachments on freedom of ... the press which follow therefrom." Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 838, 98 S.Ct. 1535, 1541, 56 L.Ed.2d 1 (1978).
 
 
 16
 Thus, we necessarily hold that Sec. 35-34-1-1(d) is overbroad; the State could have utilized less restrictive means to achieve its purpose. The predecessor to Sec. 35-34-1-1(d)[5] applied only to grand jurors, complainants, prosecutors, clerks, and judges. The State argues that the fact that the old law was replaced is evidence that it was ineffective. However, the State could have made its law applicable to a wider range of people without running afoul of the First Amendment. We note that the "secrecy" provision of Rule 6(e) applies to all people who, by virtue of their positions in the criminal justice system, might be aware of the information contained in a sealed document. The State could have adopted this middle ground. Alternatively, the State could have chosen to adopt careful internal procedures to protect, when necessary, the confidentiality of a criminal information. See Landmark, 435 U.S. at 845, 98 S.Ct. at 1544.
 
 
 17
 The State also argues that Sec. 35-34-1-1(d) imposes simply an "incidental" restriction on freedom of the press because, in this case, publication was not prohibited but only postponed for one day. This same argument was disposed of in Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), as follows:
 
 
 18
 Of course, the order at issue ... does not prohibit but only postpones publication. Some news can be delayed and most commentary can even more readily be delayed without serious injury, and there is often a self-imposed delay when responsible editors call for verification of information. But such delays are normally slight and they are self-imposed. Delays imposed by governmental authority are a different matter.
 
 
 19
 "We have learned, and continue to learn, from what we view as the unhappy experiences of other nations where government has been allowed to meddle in the internal editorial affairs of newspapers. Regardless of how beneficient-sounding the purposes of controlling the press might be, we ... remain intensely skeptical about those measures that would allow government to insinuate itself into the editorial rooms of this Nation's press."
 
 
 20
 Id. at 560, 96 S.Ct. at 2803, quoting, Miami Herald Pub. Co. v. Tornillo, 418 U.S. 241, 259, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974) (White, J., concurring).
 
 
 21
 The State's "postponement" argument must fail for another reason as well. It is undisputed that this information was related to a larger, allegedly criminal, event which was of great public interest.[6] The Supreme Court has noted that "[t]he commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions ... are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government." Cox Broadcasting Co. v. Cohn, 420 U.S. 469, 492, 95 S.Ct. 1029, 1044, 43 L.Ed.2d 328 (1975); see also Thornhill, 310 U.S. at 101-02, 60 S.Ct. at 743-44.
 
 
 22
 Undisputably, courts may seal criminal informations as well as other documents. However, when the press, by whatever means, obtains the information contained in a court-sealed document, a state cannot prohibit the publication of the information without violating the First Amendment. See Daily Mail, 443 U.S. at 103-04, 99 S.Ct. at 2670-71 ("Here, respondents relied upon routine newspaper reporting techniques to ascertain the identity of the alleged assailant. A free press cannot be made to rely solely upon the sufferance of government to supply it with information.") "An untrammeled press is a vital source of public information ... and an informed public is the essence of a working democracy." Minneapolis Star & Tribune, 460 U.S. at ----, 103 S.Ct. at 1372-73, 75 L.Ed.2d at 305, quoting, Grosjean v. American Press Co., Inc., 297 U.S. 233, 250, 56 S.Ct. 444, 449, 80 L.Ed. 660 (1936).
 
 
 23
 Finally, the State argues that the possible flight of indictees who have read about their indictments in the newspaper constitutes a "clear and present danger" to the State's interest in apprehending criminals. In Landmark Communications, the Supreme Court summarized the requirements of the "clear and present danger" standard as follows:
 
 
 24
 In a series of cases raising the question of whether the contempt power could be used to punish out-of-court comments concerning pending cases or grand jury investigations, this Court has consistently rejected the argument that such commentary constituted a clear and present danger to the administration of justice. Bridges v. California, [314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941) ]; Pennekamp v. Florida, [328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946) ]; Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947); Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). What emerges from these cases is the "working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished," Bridges v. California, supra 314 U.S. at 263, 62 S.Ct. at 194, and that a "solidity of evidence," Pennekamp v. Florida, supra 328 U.S. at 347, 66 S.Ct. at 1037, is necessary to make the requisite showing of imminence. "The danger must not be remote or even probable; it must immediately imperil." Craig v. Harney, supra 331 U.S. at 376, 67 S.Ct. at 1255.
 
 
 25
 435 U.S. at 844-45, 98 S.Ct. at 1544.
 
 
 26
 The State has not met this standard. To the contrary, the State has not produced any evidence which supports its argument. Further, the language of the statute does not limit its applicability to those situations which do present a "clear and present danger." At best the State's fears are remote and speculative. This degree of danger is insufficient to warrant an infringement on the First Amendment.
 
 
 27
 Thus, we hold that Sec. 35-34-1-1(d) is, on its face, an unconstitutional infringement of the First Amendment's guarantee of a free press. Accordingly, the district court judgment is reversed.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The State also tenders as justification its interest in protecting citizens who may be witnesses in a criminal proceeding brought against an individual named in an indictment. However, the State failed to develop this argument sufficiently to warrant our consideration of it as a separate issue. Further, we note the possibility that these interests may vary from case to case because the statute does not specify which state interests are to be served
 
 
 [2]
 Fed.R.Crim.P. 6(e)(4) provides as follows:
 The federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. Thereupon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when necessary for the issuance and execution of a warrant or summons.
 
 
 [3]
 Fed.R.Crim.P. 6(e)(2) provides as follows:
 A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under [this Rule] shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.
 
 
 [4]
 Indeed, the Supreme Court has rejected several interests as not sufficiently compelling to justify an infringement on the First Amendment. See e.g., Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983) (a state's interest in raising revenue); Smith v. Daily Mail Pub. Co., 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979) (a state's interest in preserving the anonymity of its juvenile offenders); Landmark Communications Inc. v. Virginia, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) (a state's interest in preserving the integrity of its judiciary); Oklahoma Pub. Co. v. District Court, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977) (a state's interest in preserving the anonymity of its juvenile offenders); Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (a state's interest in protecting a criminal defendant's Sixth Amendment right to a fair trial); Cox Broadcasting Co. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (a state's interest in preserving the anonymity of victims of sexual assault and the right of privacy); Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947) (a state's interest in protecting the integrity of the judiciary); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) (a state's interest in preserving the integrity of public office)
 But see Seattle Times Co. v. Rhinehart, --- U.S. ----, 104 S.Ct. 2199, 2202-2204, 81 L.Ed.2d 17 (1984) (A newspaper was the defendant in a civil action. It moved to compel discovery of certain documents. The trial court granted this motion, but also granted plaintiff's motion for a protective order to prevent dissemination and publication of information obtained under the order to compel. The Court affirmed the power of a district court to grant a protective order even where First Amendment concerns are involved. The Court held that where "a protective order is entered on a showing of good cause as required by [Fed.R.Civ.P.] 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained by other sources, it does not offend the First Amendment.")
 
 
 [5]
 Ind.Code Ann. Sec. 35-3.1-1-1(e) (Burns 1978), provided in pertinent part as follows:
 No complainant, if the charge be by information and no grand juror, if the charge be by indictment, and no prosecuting attorney, clerk, judge, or other officer shall disclose the fact that an indictment or information charging a defendant with an offense is pending until the defendant has been arrested or otherwise brought within the custody of the court ....
 
 
 [6]
 On November 2, election day, a deputy sheriff who was a candidate for the office of sheriff was suspended from his duties pending a criminal investigation. The deputy lost the election. Officials refused to disclose the nature of the criminal investigation. On November 4, a criminal information was filed, against the individual named in the sealed indictment at issue here, as the result of a public probable cause hearing during which there was testimony that the deputy sheriff had been involved in arson