**UNITED STATES of America,**
**Appellee,**

**v.**

**Walter METCALF, Appellant.**

**No. 24632.**

United States Court of Appeals,
Ninth Circuit.

Dec. 10, 1970.

Reiner E. Deglow (argued), of Fredrickson, Maxey, Bell & Allison, Spokane, Wash., for appellant.

Carroll D. Gray (argued), Asst. U. S. Atty., Dean C. Smith, U. S. Atty., Spokane, Wash., for appellee.

Before HAMLEY and ELY, Circuit Judges, and GOODWIN, District Judge.[*]

ELY, Circuit Judge:

Metcalf was convicted of having obstructed justice in violation of 18 U.S.C. § 1503. The alleged offense centered around an attempt by him to secure possession of an automobile that had been purchased with money obtained in a bank robbery.

Joe Nicholls, who had already pleaded guilty to the offense of bank robbery, was the prosecution's principal witness against Metcalf. As we shall see, however, his testimony actually undermined the Government's case. Nicholls related that he had unlawfully taken approximately $2500 from a bank in Spokane, Washington. The next day he paid $1300 in cash for a 1966 Pontiac Le Mans automobile and signed a note for the remaining $300 owing to the vehicle's seller. He drove the vehicle to the Spokane house of a friend, Robert Herr. Herr and Nicholls then left in Herr's car and visited several places in the western United States. Nicholls eventually arrived in Tacoma, Washington, where Metcalf lived. Herr was not with Nicholls at that time, apparently because he had been arrested earlier for aiding Nicholls' flight.

Nicholls contacted Metcalf and then called Mrs. Herr to inform her that someone would pick up the Pontiac which he, Nicholls, had left at the Herrs' residence. Mrs. Herr contacted the FBI, who arrested Metcalf when he reached the home of the Herrs and undertook to take possession of the automobile. Mrs. Herr testified that when she received the telephone call from Nicholls, a second voice came on the line and that this voice told her, in her words, "that there had better not be no slip-ups, or I would be sorry." When Metcalf arrived in Spokane, he called Mrs. Herr and told her that he was on his way to the house. When he came to the door, according to Mrs. Herr's testimony, he asked how much bond was required for Robert Herr's release from custody and indicated to Mrs. Herr that the bond would be arranged. Mrs. Herr handed him the keys to the Pontiac and closed the door to the house. He then walked to the automobile and was arrested when he inserted a key into a door of the vehicle.

Nicholls, the prosecution's witness, testified that he had sold the car to Metcalf for $1000 because he needed money to supply his narcotic habit, which was costing him between $150 and $200 per day. He and Metcalf had gone to a notary public in Tacoma, where title to the vehicle was signed over to Metcalf. Nicholls swore that he never told Metcalf that the automobile had been purchased with stolen money. In December, two months after the incident involved here, Metcalf paid the remaining $300 balance on the purchase price and received a record title from the State of Oregon.

[*] Honorable Alfred T. Goodwin, United States District Judge, Portland, Oregon, sitting by designation.

Nicholls further testified that Metcalf was nearby when he made the telephone call to Mrs. Herr, but that he had no way of knowing whether Metcalf was in position to have overheard the conversation. He was certain, however, that Metcalf had not taken the telephone to speak to Mrs. Herr. On this latter point, Mrs. Herr testified that the voice with which she was threatened over the telephone when Nicholls called was probably not the voice of Metcalf, with whom she had spoken over the telephone after Metcalf arrived in Spokane. The voices, according to her testimony, were different.[1]

Metcalf was tried on two theories, either of which might have been the basis for his conviction. The first theory, as embodied in the court's instructions to the jury, was that "[a]ny article, purchased in whole or in part with money obtained from the commission of a crime is evidence of that crime." The jury was charged that Metcalf should be convicted if he had attempted to secure possession of evidence with the intent of obstructing the due administration of justice. The indictment also alleged that Metcalf had threatened a potential material witness when he allegedly spoke to Mrs. Herr over the telephone. The jury was instructed, in effect, that it could return a verdict of guilt if it were convinced beyond a reasonable doubt that Metcalf had committed either of the two acts.

In reviewing a conviction, we look at the evidence in the light most favorable to the Government, drawing all reasonable inferences that tend to support the conviction. United States v. Glasser, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Viewing the evidence in this light, we think it not unreasonable that the jury, by rejecting part of the testimony of the prosecution's key witness, Nicholls, could have inferred that Metcalf knew that the car had been purchased with stolen money. The jury might have inferred that the purported sale transaction was a sham and that Metcalf was attempting to obtain the automobile for Nicholls' purposes. Upon those assumptions, our question is whether Metcalf's activity fell within the prohibitions of section 1503.

■ The statute in question is designed to achieve the twin goals of protecting the participants in a specific proceeding and of preventing a miscarriage of justice in a case pending in a federal court. Catrino v. United States, 176 F.2d 884, 887 (9th Cir. 1949). For this reason, it is well settled that the statute is not applicable until, at the earliest, a complaint has been filed with a United States Commissioner. E. g., United States v. Perlstein, 126 F.2d 789 (3d Cir.), cert. denied, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942).

In Haili v. United States, 260 F.2d 744 (9th Cir. 1958), we dealt with one's conviction, under the statute, for merely having associated with a previously convicted offender. One of the conditions of probation of the earlier convicted party was that she not associate with Haili, and her probation had been revoked. Haili was then convicted of obstructing justice. Our court noted that section 1503 deals with several specific acts, all of which are of the nature of exerting influence or coercion against individual participants in judicial proceedings. The statute then contains a general prohibition against obstructing the "due administration of justice." We held that Haili's acts, although they might in a general way have affected the administration of justice, did not fall within the prohibitions of section 1503:

"Interfering with witnesses, jurors and parties operates to bring about a miscarriage of justice in specific cases. Under the rule of ejusdem generis, the general words which follow the specific words in the enumeration of prohibited acts in the section here involved must be construed to embrace only acts sim-

---

[1]. The first voice had been of such a nature as to frighten her. On the other hand, when Metcalf spoke to her, both over the telephone and in person, he was very courteous and soft-spoken.

ilar in nature to those acts enumerated by the preceding specific words."

*Id.* at 746.

■ Moreover, the general provision, although it refers to the broad range of "due administration of justice," prohibits only specified types of impeding acts— *i. e.*, "by threats or force, or by threatening letter or communication." Thus, not only must the broad term "due administration of justice" be limited to pending judicial proceedings, but also the manner in which the statute may be violated would ordinarily seem to be limited to intimidating actions. This conclusion would appear necessarily to follow from the proposition that section 1503, since it is a criminal statute, must be, and should be, construed narrowly so that it can be upheld against the charge of vagueness. United States v. Scoratow, 137 F.Supp. 620 (W.D.Pa.1956).

■ Here, the automobile, which the prosecution contends to have constituted evidence against Nicholls, had not been taken into custody. Moreover, it was not of such material importance to the case against Nicholls as to alert the normal person to its potential evidentiary use, as would be the case with direct fruits or instrumentalities of a crime. In short, the automobile had not, at the time in question, become involved in a specific judicial proceeding, and the evidence could not possibly support an inference that Metcalf might know, or suspect, that it would become so. Secondly, even if we were to accord the automobile the status of evidence in a pending prosecution, it was most assuredly not a participant subject to threats, such as section 1503 contemplates. Finally, there were in fact no threats or force involved, unless the inference were drawn that Metcalf had threatened Mrs. Herr over the telephone from Tacoma. This inference could hardly be drawn, however, after Mrs. Herr testified that she did not believe that Metcalf had threatened her.

It seems to us that Metcalf's conduct could, at worst, be characterized as approaching that of an accessory (18 U.S.C. § 3) or, possibly, of harboring a fugitive (18 U.S.C. §§ 1071, 1072). The Government apparently believed it impossible for it adequately to make a case under either of these statutes and elected to prosecute under section 1503. In his oral argument before this court, the Government's attorney conceded, with commendable candor, that no reported case has hitherto extended the statute so far as to reach such conduct as was here involved. We are not willing to enlarge the statute's scope, especially in a case, such as this, wherein the prosecution's evidence was so remarkably weak.

■ The second theory on which Metcalf might have been convicted was that he had threatened a witness. As we have pointed out, however, the evidence was not sufficient to permit this inference to be reasonably drawn. Moreover, there was absolutely no evidence, either circumstantial or direct, to indicate that Metcalf would have necessarily known that Mrs. Herr could be a potential witness in the proceeding before the U. S. Commissioner. Nor, assuming that it was Metcalf who threatened her, did the threat relate in any way to her possible testimony. At its worst, adversely to Metcalf, the inference urged by the Government is that Metcalf's threat concerned possession of the automobile. In United States v. Scoratow, *supra*, it was held that the statute did not proscribe threats made against a potential witness when the threats concerned only that which the witness might tell investigating authorities and not that to which the witness might testify in judicial proceedings.

The evidence, including the inferences, was insufficient to support Metcalf's conviction of the offense with which he was charged. Our conclusion in this respect eliminates the need for us to discuss, in detail, another valid contention made by Metcalf. This is the contention that the prosecutor, in his closing argument, impermissibly commented about Metcalf's failure to testify in his own defense. The prosecutor did this repeatedly, by unmistakable implication, if not directly.

We could not excuse such disregard of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), even though the misconduct probably resulted from the careless zeal of a prosecutor conscious of the weakness of the case which he deemed it his duty to pursue. *Cf.* Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968), rev'g Wilson v. Anderson, 379 F.2d 330 (9th Cir. 1967).

Upon remand, the indictment will be dismissed.

Reversed, with directions.